NOTICE
Decision filed 08/06/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240746-U

NO. 5-24-0746

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 11-CF-1418 |
| | ) | |
| DAMOND RIDDLESPRIGER, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court properly denied the defendant's postconviction petition following a third-stage evidentiary hearing, where postconviction counsel provided reasonable assistance at both the second and third stages of postconviction proceedings.

¶ 2   On January 15, 2020, the defendant, Damond Riddlespriger, filed a *pro se* petition in the circuit court of Madison County seeking relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). The petition alleged that the defendant's 50-year sentence for first degree murder, imposed for an offense that he committed when he was 20 years old, amounted to a *de facto* life sentence, in violation of the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), as applied to him. The petition advanced to the second stage, where postconviction counsel filed an amended petition, and then to a third-stage evidentiary

1

hearing. On June 13, 2024, the circuit court denied the petition. The defendant now appeals, arguing not that the circuit court erred in denying the petition on its merits, but that postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the reasons that follow, we affirm the decision of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      On July 28, 2011, the defendant was charged by indictment with three counts of first degree murder (720 ILCS 5/9-1(a) (West 2010)) and one count of armed robbery (*id.* § 18-2(a)(2)), in connection with the July 11, 2011, shooting death of Marlon Poindexter. On September 26, 2013, defense counsel raised a *bona fide* doubt as to the defendant's fitness to stand trial, and the circuit court ordered a fitness examination. An examination carried out the following month determined that the defendant was fit to stand trial. In January 2014, the circuit court was informed that the defendant had twice attempted suicide while in the county jail. Accordingly, the circuit court ordered the defendant to undergo a second fitness examination. On October 2, 2014, the parties stipulated that the defendant was fit to stand trial.

¶ 5      The case proceeded to jury trial on January 12, 2015. The evidence presented at trial is detailed in this court's order on direct appeal. *People v. Riddlespriger*, 2019 IL App (5th) 150103-U, ¶¶ 4-55. Thus, we recount it here only as necessary to resolve the issues before us. At the time of the offense, the defendant was 20 years old, on juvenile parole, and wearing an ankle monitor. The evidence at trial established that the defendant shot Poindexter through the back of the head at point-blank range. The defendant had possessed the murder weapon for at least one day prior to the shooting. Following the offense, the defendant removed his ankle monitor and fled to St. Louis, Missouri. The defendant remained at large for nearly a month.

2

¶ 6     At trial, the jury convicted the defendant of first degree murder, while acquitting him of felony murder and armed robbery. Following trial, on March 17, 2015, the case proceeded to a sentencing hearing. The presentence investigation report (PSI) related that, as a child, doctors had diagnosed the defendant with attention-deficit/hyperactivity disorder (ADHD), that his schools had placed him in special education classes, and that he had smoked marijuana daily between the ages of 15 and 20. While the State argued that no mitigating factors applied, it declined to request a specific term of imprisonment. Defense counsel requested the 45-year minimum term, emphasizing that the defendant was only 20 years old at the time of the offense. The defense also highlighted the defendant's talents as an artist, bringing to the circuit court's attention a novel that the defendant had written during the pendency of his case.

¶ 7     The circuit court sentenced the defendant to 50 years' imprisonment, consisting of 25 years for first degree murder, plus a mandatory 25-year firearm enhancement. In imposing the sentence, the circuit court identified only the defendant's relatively short criminal history as a potential mitigating factor. This mitigation, the circuit court noted, was diminished by the fact that the defendant was on parole when he committed the offense. The circuit court further found that the defendant's conduct caused serious harm, and that the 50-year sentence was necessary to deter others from committing similar crimes.

¶ 8     On direct appeal, the defendant argued, *inter alia*, that his 50-year sentence amounted to a *de facto* life sentence, which violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him. This court affirmed the defendant's conviction and sentence. *Riddlespriger*, 2019 IL App (5th) 150103-U, ¶ 118. On January 15, 2020, the defendant filed a *pro se* petition under the Act (725 ILCS 5/122-1 *et seq.* (West 2018)), which alleged, *inter alia*, that his *de facto* life sentence violated the proportionate penalties clause as applied to

3

him, because the sentencing court failed to consider his youth and its attendant circumstances at the time of the crime's commission. The defendant did not attach any supporting documentation to his petition, which advanced to the second stage on May 14, 2020. The circuit court consequently appointed the defendant postconviction counsel.

¶ 9 On December 21, 2021, postconviction counsel filed an amended petition, incorporating the claims from the defendant's *pro se* petition while expanding upon the sentencing claims. The amended petition argued that the sentencing court failed to consider the mitigating factors identified in *Miller v. Alabama*, 567 U.S. 460 (2012). It noted the defendant's youth when he committed the offense and cited Illinois decisions which extended *Miller* principles to youthful offenders over the age of 18. In making these arguments, the defendant relied principally on *People v. House*, 2019 IL App (1st) 110580-B, and a juvenile science publication referred to therein. Postconviction counsel contemporaneously filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which averred that she had consulted with the defendant to ascertain his contentions of constitutional deprivation, examined the record of the trial proceedings, and made any amendments to the defendant's *pro se* petition necessary for an adequate presentation of the defendant's claims.

¶ 10 The State moved to dismiss the defendant's amended petition on January 5, 2022. The State argued that the defendant's proportionate penalties claim was conclusory and without merit because, apart from his mere age at the time of the offense, the defendant failed to articulate how the facts and circumstances particular to the defendant rendered his sentence unconstitutional. Postconviction counsel responded at the hearing by referring to well-established scientific findings which support the notion that brain development continues into one's mid-twenties. Postconviction counsel also referred to the defendant's "limited intelligence," "limited capabilities," and his

4

difficult home life in an effort to establish his rehabilitative potential. On July 15, 2022, the circuit court denied the State's motion to dismiss and advanced the petition to a third-stage evidentiary hearing on the defendant's proportionate penalties claim.

¶ 11     The circuit court held the evidentiary hearing on May 9, 2024. Postconviction counsel presented three witnesses: the defendant's trial attorney, the defendant's mother, and the defendant himself. The trial attorney, Harry Anderson, testified that the defendant seemed competent and able to assist in his defense, though he believed that the defendant was "somewhat immature" and easily agitated. Anderson stated also that the defendant displayed no mental health issues at the time of trial and appeared to understand what was happening throughout both the trial and sentencing. Anderson also acknowledged that he had reviewed the PSI before the defendant's sentencing and was aware of the defendant's learning disabilities and need for special education.

¶ 12     The defendant's mother, Kendria Riddlespriger, testified that the defendant had a learning disability and was less mature than her other children. Kendria recounted how she worked long hours when the defendant was a teenager, forcing the defendant to remain at home with his father, a man who was both physically and verbally abusive, who sold drugs, and who had been convicted of several crimes, including robbery. Kendria related that, upon entering middle school, the defendant began running "the streets" in an effort to emulate his father. However, she noted that the defendant had matured since his incarceration.

¶ 13     The defendant testified that, growing up, he struggled to understand things. He recounted how he was raised under "street laws," and that his father was abusive. He believed that between the ages of 18 and 20, he was neither smart nor mature. He acknowledged that he had been diagnosed with ADHD and oppositional defiant disorder but insisted that he was not a "mental

5

health case." He further acknowledged that, at the time of trial, he understood that he had been charged with murder.

¶ 14 In closing, postconviction counsel argued that the sentencing court failed, in imposing its sentence, to consider the defendant's immaturity, ADHD, and learning disabilities. In response, the State countered that no evidence presented at the hearing demonstrated that the defendant was the functional equivalent of a juvenile at the time of the offense; nor did the defendant's relative youth outweigh the offense's seriousness.

¶ 15 On June 13, 2024, the circuit court issued a written order denying the defendant's amended petition. The circuit court considered the statutory factors which apply when sentencing defendants under 18 years of age. It concluded that the defendant did not meet the criteria of a youthful offender, and made several findings in support of this conclusion. These findings included that the defendant (1) was nearly 21 years old when he committed the murder; (2) had both a juvenile and an adult criminal record, including a commitment to the juvenile department of corrections; (3) that when he committed the crime, he was both on juvenile parole and wearing an ankle monitor; (4) he acted alone, under no external pressure; and (5) the offense required planning and deliberation, as the defendant had possessed the firearm for at least a day prior to the murder.

¶ 16 The circuit court's order acknowledged the defendant's difficult home environment and special education needs, but found that the evidence did not show immaturity nor any disability which affected the defendant's judgment. The circuit court closed by observing that the defendant would eventually have the opportunity to be released from prison. It therefore determined that the defendant failed to establish that his sentence violated the proportionate penalties clause as applied to him. The defendant filed a timely notice of appeal on June 17, 2024.

¶ 17                         II. ANALYSIS

¶ 18    The defendant appeals the circuit court's third-stage denial of his postconviction petition. Rather than challenge the circuit court's ruling on the merits, he argues that postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). He argues that postconviction counsel should have substantiated the defendant's as-applied proportionate penalties challenge by introducing evidence that he was developmentally equivalent to a juvenile. Specifically, the defendant contends that postconviction counsel should have attached supporting documentation to the amended petition and should have hired or requested funding for an expert to opine on the defendant's developmental equivalence to a juvenile. He asks this court to remand for new second-stage proceedings, with new postconviction counsel.

¶ 19    Under the Act, a criminal defendant may claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The Act provides a three-stage mechanism whereby a defendant may advance such a claim. The three stages are as follows: (1) review of the postconviction petition for the gist of a constitutional claim; (2) the State's filing of an answer or motion to dismiss and, if the defendant is indigent, the appointment of postconviction counsel; and (3) an evidentiary hearing, followed by the circuit court's ruling, if the petition survives the second-stage proceedings. *People v. Custer*, 2019 IL 123339, ¶ 29.

¶ 20    There exists no constitutional right to the assistance of counsel in a postconviction proceeding. *People v. Suarez*, 224 Ill. 2d 37, 41 (2007). Rather, the right to counsel under the Act is a matter of "legislative grace." *People v. Porter*, 122 Ill. 2d 64, 72 (1988). Accordingly, a postconviction petitioner is entitled only to a "reasonable" level of assistance. *People v. Flores*,

7

153 Ill. 2d 264, 276 (1992). To ensure that a postconviction petitioner receives that level of assistance, Rule 651(c) provides that:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 21    However, once a petition advances to a third-stage hearing, Rule 651(c) no longer applies, and the standard for assessing postconviction counsel's performance is that of general reasonableness. *People v. Watts*, 2026 IL App (4th) 250533, ¶ 62. Courts have recognized that we may apply the *Strickland* test (*Strickland v. Washington*, 466 U.S. 668 (1984)) for ineffective assistance of counsel to measure "reasonable" performance under the Act, as "[i]t stands to reason that, if postconviction counsel's assistance cannot be deemed ineffective under *Strickland*, it cannot be deemed unreasonable under the Act." *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 36.

¶ 22    Under the *Strickland* test, the defendant must prove both that: (1) his attorney's errors were so serious as to fall below an objective standard of reasonableness; and (2) that these errors prejudiced the defendant to the point that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability" of a different result is a probability sufficient to undermine confidence in the proceeding's outcome. *Strickland*, 466 U.S. at 694. To be successful on a claim for ineffective assistance of counsel, the defendant must satisfy both prongs. *Id.* at 697. While the failure to establish either prong precludes the finding of ineffective assistance of counsel, we may dispose of a claim by examining either the performance or the prejudice prong alone. See *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

8

¶ 23    In support of his central argument, the defendant relies on several cases from our supreme court. Wielding these cases, the defendant contends that postconviction counsel's failure to provide scientific and expert evidence on the defendant's developmental equivalence to a juvenile was, where applicable, a *per se* Rule 651(c) violation, or otherwise unreasonable assistance of postconviction counsel. Of these cases, *People v. Harris*, 2018 IL 121932, and *People v. House*, 2021 IL 125124, receive most of the defendant's attention. We have examined both cases and find that the defendant's reliance upon them is misplaced.

¶ 24    In *People v. Harris*, 2018 IL 121932, ¶ 63 our supreme court vacated an appellate court decision which, in turn, overturned a circuit court sentence as unconstitutional under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). In its analysis, the court stressed the distinction between facial and as-applied constitutional challenges. *Id.* ¶ 38. An as-applied challenge "requires a showing that the statute is unconstitutional as it applies to the challenging party's specific circumstances." *Id.* ¶ 52. In such a challenge, it is therefore "paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks omitted.) *Id.* ¶ 39. Our supreme court observed that the trial court held no evidentiary hearing on Harris's constitutional claim, and consequently, there existed no findings of fact on the defendant's specific circumstances as would be necessary for a proper as-applied challenge. In *People v. House*, 2021 IL 125124, the court again held that the appellate court erred by overturning a sentence on an as-applied challenge despite not having the benefit of a sufficiently developed evidentiary record.

¶ 25    The defendant cites *Harris* and *House* for the proposition that, in order to present the court with a sufficiently developed evidentiary record, petitioners must present evidence of how findings in scientific publications apply to their specific facts and circumstances. *Harris*, 2018 IL 121932,

9

¶ 40; *House*, 2021 IL 125124, ¶¶ 29-32. From this, the defendant reasons that presenting such evidence requires the aid of an expert witness and, consequently, that postconviction counsel's failure to call an expert in the instant case amounted to a Rule 651(c) violation, as counsel failed to "ma[k]e any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 26    As noted, to the extent that the defendant attempts to extend this argument to the third-stage evidentiary hearing, Rule 651(c) does not apply to that stage. *Watts*, 2026 IL App (4th) 250533, ¶ 62. However, even if we conceive of the defendant's argument as applying against the third-stage standard of reasonable assistance, it reads too much into the supreme court's holdings. Essentially, the defendant is asking this court to mandate that postconviction counsel must, in every emerging-adult proportionate penalties case, attach specific scientific literature and retain an expert witness in order to provide reasonable assistance. We will not do so. *Harris* and *House* resolve simply what a reviewing court must possess to decide an as-applied proportionate penalties challenge on the merits: that is, a developed record, which contains trial-court findings on the defendant's specific circumstances and how science on juvenile brain development applies to the defendant. *Harris*, 2018 IL 121932, ¶¶ 39, 46; *House*, 2021 IL 125124, ¶ 29. Nowhere do these cases purport to enlarge the duties of postconviction counsel. Reasonable assistance does not require the introduction of specific evidence, nor the calling of certain witnesses, and neither *House* nor *Harris* purports to transform counsel's basic duty to provide an adequate presentation of the petitioner's claims.

¶ 27    As previously stated, we assess postconviction counsel's performance at the evidentiary hearing under the general reasonableness standard, as measured against *Strickland*. *Pabello*, 2019 IL App (2d) 170867, ¶ 36. Viewed through that lens, the defendant's argument fares no better. It

10

is well established that decisions concerning which witnesses to call, and what evidence to present, are matters of trial strategy, and thus are generally immune from claims of ineffective assistance of counsel. *People v. Reid*, 179 Ill. 2d 297, 310 (1997). More specifically, "[c]ounsel's failure to call an expert witness is not *per se* ineffective assistance, even where doing so may have made the defendant's case stronger, because the State could always call its own witness to offer a contrasting opinion." *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005). The only exception to this general rule arises when "counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing." *Reid*, 179 Ill. 2d at 310; *People v. Guest*, 166 Ill. 2d 381, 394 (1995).

¶ 28    This case does not present an example of a completely unsound trial strategy, lacking in meaningful adversarial testing. Here, postconviction counsel consulted with the defendant, examined the record, incorporated the defendant's *pro se* petition, and filed a facially compliant Rule 651(c) certificate. She then successfully defended the defendant's petition against the State's motion to dismiss. See *People v. Williams*, 2025 IL 129718, ¶ 46 (noting that a claim of unreasonable assistance is undermined when postconviction counsel succeeds in advancing the petition to later stages). She accomplished this by noting that courts have extended *Miller*'s protections to individuals over the age of 18, and referenced the defendant's limited intelligence, limited capabilities, and difficult home life as reasons for why, ultimately, the *Miller* protections ought to apply to the defendant. The petition then advanced to a third-stage evidentiary hearing, where postconviction counsel further developed the defendant's claims by presenting testimony from the defendant's trial counsel, his mother, and the defendant himself regarding his developmental characteristics, learning disabilities, familial background, and immaturity at the time of the crime's commission. Postconviction counsel's choice to present the defendant's

11

developmental characteristics through lay testimony rather than expert opinion was a strategic decision; one which did not deprive the defendant of meaningful adversarial testing. Faced with such a record, we cannot say that postconviction counsel's performance fell below an objective standard of reasonableness. The defendant has therefore failed to demonstrate ineffective assistance of counsel and, consequently, he cannot demonstrate unreasonable assistance of counsel under the Act.

¶ 29   The defendant additionally contends that postconviction counsel provided unreasonable assistance by not filing a written response to the State's motion to dismiss at the second stage, or by otherwise failing to amend the petition after the State identified its deficiencies. We need only to address this argument briefly. For this contention, the defendant relies upon this court's decision in *People v. Williams*, 2023 IL App (5th) 220185-U, ¶ 26, *rev'd*, 2025 IL 129718. Our supreme court has since reversed this decision. *Williams*, 2025 IL 129718, ¶ 2. In doing so, the supreme court has expressly held that no authority requires postconviction counsel to answer the State's motion, nor to amend the petition in response, and that the failure to do so does not amount to unreasonable assistance. *Id.* ¶¶ 46-47.

¶ 30                                    III. CONCLUSION

¶ 31   For the foregoing reasons, we conclude that the circuit court properly denied the postconviction petition following the third-stage evidentiary hearing, and we affirm the judgment of the circuit court of Madison County.

¶ 32   Affirmed.